## SPAULDING *vs.* STRANG and others.

Where creditors of an insolvent firm entered into an agreement with the latter, by which they covenanted that in case the debtors would execute an assignment of their property to S., preferring therein, as first class creditors, an amount not exceeding $60,000, and preferring the covenantors to the amount of fifty cents on the dollar on their several claims, they would discharge the debtors from all liability for the balance of such claims; and such assignment was accordingly executed; *Held* that the agreement and assignment were to be construed as constituting parts of one and the same transaction; and that the assignment was on its face fraudulent and void.

An insolvent debtor cannot do, by concealment, what he may not do openly. Hence he cannot, by a secret bargain with a portion of his creditors, compel them to agree to his release on condition of his executing an assignment giving them preferences.

THIS action was brought by the plaintiff, as a judgment creditor of Alonzo Bradner and Gabriel Furman, to set aside an assignment made by them as copartners, and also assignments made by them individually to .the defendant Strang, as assignee, in trust for the benefit of creditors, on the 1st day of December, 1854, on the ground of fraud. This action was commenced on the 22d day of December, 1856, and tried at the special term of this court, in New York, October, 1858, before Hon. JOSIAH SUTHERLAND, justice, who found the following facts, viz : That the plaintiff, on the 29th day of March, 1855, recovered a judgment against Alonzo Bradner and Gabriel Furman, jun., for the sum of $2937.99, damages and costs, which was duly docketed on that day in the clerk's office of the city and county of New York. That an execution against the property of the defendants therein was subsequently issued on said judgment, to the sheriff of the city and county of New York, where the defendants then resided, which, before the commencement of this action, was returned wholly unsatisfied, and that no part of said judgment has since been paid. That on the 1st day of January, 1854, said Bradner and Furman formed a copartnership as wholesale dry goods merchants in the city of New York, under the firm name of Bradner & Furman, and carried on said

business in that city as copartners, until on or about the 1st day of December, 1854, when they executed a general assignment of all their copartnership and individual property to Peter O. Strang, one of the above named defendants, as assignee, for the benefit of creditors, which said copartnership assignment was introduced in evidence. This instrument was upon trust to pay, first, certain preferred creditors named in schedule A annexed thereto ; and second, " upon the further trust, after fully satisfying the said debts and liabilities, that the said party of the second part shall and will, out of the remainder of the proceeds of the said assigned property, pay to each of the creditors of the said parties of the first part, mentioned in a schedule hereto annexed, marked B, and which is to be taken as a part of this instrument, fifty per cent on the amount of each of their several and separate debts, claims and demands against the said parties of the first part." That the said individual assignments were of the same tenor and effect as that made by said copartnership. That the plaintiff's judgment was recovered on an indebtedness of said firm of Bradner & Furman, which said indebtedness accrued prior to the making of said assignments, and prior to the failure of the firm. That prior to the 16th day of November, 1854, and as early as August in that year, said firm became embarrassed and failed in business, and were unable to pay their debts, and that on that day they entered into an agreement with certain of their creditors, which was introduced and read in evidence by the plaintiff, and was in the words and figures following, to wit :

" In consideration of one dollar to each of us in hand paid by Bradner & Furman, of the city of New York, the receipt whereof is hereby acknowledged, we the undersigned, creditors of the said Bradner & Furman, do severally, and not the one for the other, covenant, promise and agree to and with the said Bradner & Furman, that we will accept and receive from them on or before the 1st day of December, 1854, in full satisfaction of their present indebtedness to us, (due or to

grow due,) their own paper for the amount of forty cents on the dollar for the several amounts due or to grow due from them, payable in six and twelve months, with satisfactory security ; and their own paper for ten cents on the dollar, payable in eighteen months ; or in case the said Bradner & Furman shall be unable to do so, then we covenant, promise and agree, to and with them, that in case they shall, on or before the 1st day of December, 1854, make and deliver to Peter O. Strang an assignment of all their property then owned by them, preferring in said assignment as first class creditors an amount not exceeding sixty thousand dollars, and preferring us as second class creditors therein to the amount of fifty (50) cents on the dollar on our several claims, that we shall and will in such case, on the execution and delivery of such assignment, discharge them, the said Bradner & Furman, from all liability for the balance or remainder of our claims against them."

That this agreement was offered to the creditors for execution by Bradner & Furman ; that it was signed by the creditors, whose names are subscribed thereto, at the instance and request of Bradner & Furman ; and that said Bradner & Furman ratified and became parties to said agreement by accepting the same, and acting thereunder. That said assignments, copartnership and personal, were made and executed and delivered by said Bradner & Furman, and accepted by said Strang, assignee, under and in pursuance of the said agreement of November 16th. That said Strang, as assignee, immediately entered upon the execution of said assignments, and has continued to act thereunder ever since. That he has realized from the assets $72,377.82. That he has paid out to the first class creditors named in said assignments, and in full of their debts, the sum of $61,072.42, and that he now holds in his hands, and did at the commencement of this suit, the balance of proceeds, to wit, the sum of $11,305.40, which is more than sufficient to satisfy the plaintiff's claim herein, and also holds the residue of the property. That the debts

and liabilities of said Bradner & Furman, when they failed and made said assignments, amounted to about $194,000. That nearly the whole residue of assets over and above the proceeds already realized are uncollectible and wholly worthless; and that said assignee has realized to nearly the full extent from said assets. That the creditors preferred in the second class, or schedule B, are the same creditors who signed said agreement, and no others. That plaintiff did not sign it. That his claim is not preferred in the first or second class, but that he falls in the third class. That said assignments and agreement constitute parts of one and the same transaction. That nothing has been paid under said assignments to the second class creditors, and that most if not all of said second class debts were purchased after the assignments, by friends or relatives of the assignors, or one of them, at rates from ten to thirty cents on a dollar. That before the commencement of this suit Alonzo Bradner departed this life, leaving Gabriel Furman him surviving, in said copartnership. That there was due the plaintiff, on said judgment recovered by him against said Bradner & Furman, the sum of $2937.99, with interest thereon from the 29th day of March, 1855. That this action was commenced on the 22d day of December, 1856.

From the foregoing facts the justice found the following conclusions of law : *First.* That the said assignments, and each of them, and said agreement of November 16th, were and are fraudulent and void as to the plaintiff and his said judgment. *Second.* That the plaintiff is entitled to payment of his judgment, and interest thereon from March 29th, 1855, with costs, out of the said trust fund in the hands of the defendant Strang, as assignee, at the date of the commencement of this suit, or that may since have come into his hands. He accordingly directed judgment for the plaintiff against the defendants, that said assignments, and each and all of them, and the said agreement of November 16th, 1854, be declared to be and to have been fraudulent and void, and

of no effect whatever as to the plaintiff and his said judgment. That said assignments and agreement be set aside and annulled as to the plaintiff and his said judgment ; and that the defendant Peter O. Strang pay the plaintiff said judgment, with interest thereon from 29th March, 1855, with costs, out of the trust fund.

The following reasons were given by the justice for his decision, at the special term.

SUTHERLAND, J. "I think the assignments made, or purporting to have been made, for the benefit of their creditors, by Bradner & Furman, on the 1st day of December, 1854, must be construed in connection with the previous agreement of the 16th of November, between them and certain of their creditors, and that in deciding the question whether the assignments were and are fraudulent and void as to the plaintiff, on their face, the agreement and the assignments must be looked upon as constituting one transaction or instrument. The assignment of the partnership property contains a recital in these words : "Whereas, the said parties of the first part are copartners in trade in the city of New York, under the firm of Bradner & Furman, and are at present unable to pay their debts, *and have agreed* to assign the property hereinafter referred to for the benefit of their creditors, *in the manner hereinafter mentioned.*" The complaint alleges that the assignment which Bradner & Furman respectively made of their individual property contained similar provisions to those contained in the assignment of their partnership property, and was made for a like purpose, and pursuant to the agreement of the 16th of November previous. This allegation is not denied by the answer of the defendants, but is substantially admitted by it. By the agreement of the 16th of November, the creditors who executed it covenanted to and with Bradner & Furman, that in case they should, on or before the 1st day of December, 1854, execute to Peter O. Strang an assignment of all their property, preferring in said

assignment as first class creditors, an amount not exceeding $60,000, and preferring them (the creditors who executed the assignment) to the amount of fifty cents on the dollar on their several claims, they would in such case, on the execution and delivery of such assignment, discharge them, the said Bradner & Furman, from all liability for the balance of their claims. The assignments were made to Peter O. Strang on the 1st day of December, 1854. By the assignment of the partnership property, certain crditors, representing about $53,000 of the debts, were first to be paid in full ; the sixty creditors who signed the agreement of the 16th of November, representing about $93,000 of the debts, were next to be paid 50 per cent, and then, if there was any thing left, it was to be applied in equal proportions, and without preference, towards the payment of all other partnership debts.

It is apparent that the assignments were, in fact, made in pursuance of the agreement of the 16th of November, and that they should be construed together, and should be looked upon as constituting one instrument, for the purpose of seeing whether the law, on the face of the instruments themselves, pronounces the transaction illegal, and fraudulent and void, as to the plaintiff and other creditors who were not preferred, and who declined signing the agreement of the 16th of November.

Strang, the assignee, has realized from the assigned property $72,377.82, and that is all that probably ever will be realized. The preferred debts of the first class, amounting, with interest thereon, to $61,072.42, have been paid by the assignee. The rest of the property, and of its proceeds, are in the hands of the assignee. The effect of the transaction, if carried out, would be wholly to deprive the plaintiff and other creditors who did not sign the agreement, and who were first in the third class, of any share or portion of the assigned property, or of its proceeds. By the agreement of the 16th of November, the creditors who signed it, in the first place, severally covenanted to and with Bradner & Furman, *in con-*

*sideration of one dollar* to each of them *paid by Bradner &
Furman,* that they would discharge their debts on receiving,
on or before the 1st day of December, 1854, forty cents on
the dollar in securities, and the notes of Bradner & Furman
for ten cents on the dollar. The creditors then further cov-
enant, "in case the said Bradner & Furman shall be unable
to do so," (that is, effect the compromise,) upon the execu-
tion of the assignment to Strang, putting them in the second
class for fifty per cent of their debts, to release the balance,
as above and more at large substantially set forth.

The acceptance of the agreement by Bradner & Furman,
although it does not appear to have been signed by them,
was in effect a promise or covenant on their part, in case they
made an assignment, to make it to Strang, and to put the
creditors who had signed it in the second class, and to prefer
them over those in the third class, to the amount of fifty cents
on the dollar. It is apparent from the papers and from the
whole transaction that the consideration which induced this
preference was not any supposed equitable nature of the
claims of these creditors, or any sense of a moral or honora-
ble obligation, but was the covenant on the part of these
creditors to release the balance of their claims. By this
transaction these creditors purchased, and Bradner & Fur-
man sold to them, their position in the assignment, and the
chance of getting fifty per cent, or at least something on their
debts. Surely, the absolute release of their future acquisi-
tions from nearly $50,000 of debt was an important consid-
eration for the assignors. Surely, if by this arrangement, or
transaction, the assignors secured or reserved to themselves
the absolute right to this release, they secured or reserved an
important benefit for themselves. The manifest intent of
Bradner & Furman was to coerce all of their creditors into
the terms of the compromise provided for in the agreement of
the 16th of November.

It would appear from the instrument itself, and I think it
appears from the pleadings and the evidence in this case out-

Spaulding *v.* Strang.

side of the instrument, that the compromise was first offered to the creditors, and not proposed by them.   The agreement purports to have been executed in consideration of one dollar paid by Bradner & Furman.   By presenting this instrument to the creditor, Bradner & Furman in effect said to him, " Sign this, and you will get half your debt; but if you do not sign it, you will of course fall into the third class and get nothing."   It is plain to me, from the transaction as shown by the papers, that Bradner & Furman wished to avoid making an assignment by making the proposed compromise with all their creditors.   Not being able to get all, except those whom they intended to pay in full, to sign it, they made the assignment.

It appears from evidence in this case, that notwithstanding the assignment, the assignee has never paid any thing to the second class creditors, and that most, if not all, of their claims after the assignments were purchased by friends or relatives of the assignors, or of one of them, at rates from ten to fifty cents on the dollar.

My conclusion is, that the assignment to Strang, when viewed in connection with the previous agreement of the 16th of November, on its face is fraudulent and void as to the plaintiff, and must be declared to be so, upon two grounds: 1st. Upon the ground that the assignors thereby intended to reserve or secure for themselves a benefit.   2d. Upon the ground that the whole proceeding, viewed as one transaction, was an attempt to coerce the creditors to enter into compromise.   I think this case comes fairly within the principle decided in *Hyslop* v. *Clarke*, (14 *John.* 458 ;)  *Wakeman* v. *Grover*, (4 *Paige*, 23 ; *S. C.*, 11 *Wend.* 187 ;)  *Armstrong* v. *Byrne*, (1 *Edw. Ch.* 79 ;)  *Lentilhon* v. *Moffat*, (*Id.* 451;) and *Mills* v. *Levy*, (2 *id.* 183.)

An insolvent has a right to make an assignment for the benefit of his creditors, with preferences.   In this case Bradner & Furman had a right to prefer the second class creditors to the third, but they had no right to enter into a *bargain*

with the second class to give them such preference, and carry it out under color of an assignment for the benefit of their creditors, for their own benefit, to the injury of the plaintiff and other creditors not parties to the *bargain*. The plaintiff is entitled to a judgment declaring the assignment and the whole transaction void, as to him and other creditors who were not preferred, and did not sign the agreement of the 16th of November; and that he is entitled to be paid the amount of his judgment, with interest thereon, and the costs of this action, out of the assigned property, or the proceeds thereof, remaining in the hands of the assignee after the payment of the first class creditors in full, at the time of the commencement of this action.

It appearing, by answer of the defendants, that there remained in the hands of the assignee, after having paid the creditors of the first class in full, of the proceeds of the assigned property, more than sufficient to pay the plaintiff's claim, with costs, my impression is, that the assignee should be directed to pay the same out of such funds, without any reference to take an account of the assigned property, and the proceeds thereof. This question, and all other questions, is reserved, however, until the settlement of the decree, which must be settled on two days' notice.

As this action is for the benefit of the plaintiff alone, as a judgment and execution creditor, and not for the benefit of himself and other creditors in the like situation, if the assignee has sufficient of the trust funds in his hands to pay the plaintiff's claim, after having paid the first class creditors in full, I see no necessity either for a receiver or for a reference to take an account."

From the judgment entered at the special term, the defendants appealed.

*John S. Jenness*, for the appellants.

*J. S. Torrance*, for the respondents.

Spaulding *v.* Strang.

*By the Court,* INGRAHAM, P. J. The justice who tried this case has found that the assignments and agreement are one, constituting parts of one and the same transaction. That the creditors named in the second class are the same who signed the agreement, and no others are included therein. And that in consequence of the terms contained in the agreement, the assignments are void.

It was conceded on the argument, as the law of this state, that an assignment containing on its face a provision for the release of the debtor by the creditors who are preferred, is void. I see no difference in the application of this rule to a case where, by a secret agreement, the same condition is imposed upon a creditor. It would not be a creditable administration of justice to hold that an insolvent debtor may do by concealment what he may not do openly, and that he may, by a separate agreement which he conceals, compel his creditors to agree to his release on condition of his executing the assignment, which he could not do if the same agreement was inserted in the assignment.

The finding of the judge, therefore, that these two instruments are but one transaction, is conclusive as to this question. If they were but one transaction, then the assignment and the agreement to release are to be construed in the same way as if the agreement was incorporated in the other instrument.

The cases referred to by the counsel for the appellant are cases referring to the issuing of attachments, which hold that a mere threat to make an assignment if the creditor sues or does some other act, are not sufficient to warrant the issuing of an attachment, but they cannot be used to sustain the doctrine that a debtor may, by a secret agreement with creditors to release him if they are preferred, sustain an assignment giving such preferences..

The question put to the witness Furman was properly excluded. It asked not only for his own intent, but also for that of his partners. Had his own intent, merely, been

the subject of inquiry it would have been admissible, under the decision in *Seymour* v. *Wilson*, (14 *N. Y. Rep.* 567,) but he could not testify as to the intent of his partners. Even if admissible, it would be immaterial, because the facts here, of themselves, render the assignments void, irrespective of the intent of the parties.

The judgment should be affirmed.

[NEW YORK GENERAL TERM, February 3, 1862. *Ingraham, Leonard* and *Clerke*, Justices.]